# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| JOHN W. CLEMENTS, | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| v. | **Case No. 2:06-cv-00974-PMW** |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

Before the court is John W. Clements's ("Plaintiff") appeal of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434, and his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see id*. §§ 1381-1383f.  After careful consideration of the written briefs and the complete record, the court has determined that oral argument would not be helpful or necessary in this case.

## RELEVANT BACKGROUND

On October 23, 2003, Plaintiff protectively filed for DIB and SSI, alleging disability based on neck and back injuries, arthritis, and depression.[2]  His applications were denied initially

---

[1]  On February 12, 2007, Michael J. Astrue (the "Commissioner") was sworn in as the Commissioner of Social Security.  Accordingly, he has been automatically substituted for Jo Anne B. Barnhart as the defendant in this action.  *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2]  *See* docket no. 5, Administrative Record ("Tr. ____"), 54-56, 101, 198-201.

and upon reconsideration.[3]  On March 14, 2006, a hearing was held before an Administrative

Law Judge ("ALJ").[4]  The ALJ issued a written decision on March 30, 2006, determining that

Plaintiff was not disabled under the Social Security Act because he retained the residual

functional capacity ("RFC") to perform his past relevant work as a data transcriber.[5]  The

Appeals Council denied Plaintiff's request for review of that decision, making it the

Commissioner's final decision in this case for purposes of judicial review.[6]  *See* 42 U.S.C.

§§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

On November 21, 2006, Plaintiff filed his complaint in this case, which was originally

assigned to Chief District Judge Tena Campbell.[7]  Thereafter, both parties consented to having a

Magistrate Judge conduct all proceedings in this case, including entry of final judgment, with

appeal to the United States Court of Appeals for the Tenth Circuit.[8]  Accordingly, on January 16,

2007, this case was reassigned to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C.

§ 636(c) and rule 73 of the Federal Rules of Civil Procedure.[9]

---

[3] *See* Tr. 36-37.

[4] *See* Tr. 208-242.

[5] *See* Tr. 10-20.

[6] *See* Tr. 5-7.

[7] *See* docket no. 3.

[8] *See* docket no. 6.

[9] *See id*.

The Commissioner filed his answer to Plaintiff's complaint on January 8, 2007,[10] and the court received the Administrative Record on January 9, 2007.[11] Plaintiff filed his opening brief on May 16, 2007.[12] The Commissioner filed his responsive brief on July 17, 2007.[13] Plaintiff filed his reply brief on September 7, 2007.[14]

<u>**STANDARD OF REVIEW**</u>

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been

---

[10] *See* docket no. 4.

[11] *See* docket no. 5.

[12] *See* docket no. 11.

[13] *See* docket no. 15.

[14] *See* docket no. 18.

followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)–(ii), 416.920(a)(4)(i)–(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At the fourth step, the claimant must show that the impairment prevents performance of his "past

relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  "If the claimant is able to

perform his previous work, he is not disabled." *Williams*, 844 F.2d at 751.  If, however, the

claimant is not able to perform his previous work, he "has met his burden of proof, establishing a

prima facie case of disability." *Id.*

      At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id.*  At

this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

"whether the claimant has the [RFC] to perform other work in the national economy in view of

his age, education, and work experience." *Id.*; *see* 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If it is determined that the claimant "can make an adjustment to other work,"

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled.  If, on the other hand, it is

determined that the claimant "cannot make an adjustment to other work," 20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

## ANALYSIS

      Plaintiff makes five arguments in support of his claim that the Commissioner's decision

should be reversed.  Plaintiff argues that the ALJ erred by (1) failing to determine that Plaintiff's

sleep apnea was a severe impairment at step two of the evaluation process; (2) improperly

rejecting the opinions of Plaintiff's treating physician; (3) improperly rejecting Plaintiff's

testimony; (4) failing to conduct an adequate analysis under step four of the evaluation process;

and (5) failing to fulfill his obligation under Social Security Ruling ("SSR") 00-4p.  The court

will address each argument in turn.

### I.  Sleep Apnea

Plaintiff claims that the ALJ erred at step two of the evaluation process by failing to determine that his sleep apnea was a severe impairment.  The court disagrees.

In Social Security cases, it is the claimant's burden to establish disability.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  While this requires only a "'de minimis' showing of impairment . . . , the claimant must show more than the mere presence of a condition or ailment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  More specifically, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists."  *Hawkins*, 113 F.3d at 1167.

Based upon the court's review of the administrative record, Plaintiff failed to meet that burden in the proceedings below.  Plaintiff's briefs focus mainly on the March 9, 2005 medical report relating to Plaintiff's initial consultation for sleep apnea, which does indicate that Plaintiff suffered from some minor limitations as a result of his sleep apnea.[15]  Later medical reports indicate, however, that the treatment plan for Plaintiff's sleep apnea was ongoing, and there was no evidence presented to the ALJ concerning the final outcome of that treatment plan.

A report of Plaintiff's second consultation on November 16, 2005, demonstrates that while Plaintiff was not tolerating Continuous Positive Airway Pressure ("CPAP") therapy well at that time, he indicated that he had not made any adjustments to his CPAP mask and that, in

---

[15]  *See* Tr. 180-182.

6

general, it was comfortable.[16]  Plaintiff also indicated that he did not feel claustrophobic when wearing the mask, and his girlfriend indicated that the mask was helping with his snoring and sleep apnea.[17]  Plaintiff was instructed on some adjustments he could make to the mask and told to follow up in four weeks unless otherwise necessary.[18]

The final medical report relating to Plaintiff's sleep apnea is dated December 21, 2005.[19] That report indicates that Plaintiff was continuing to have problems with his CPAP mask.[20]  It also indicates that Plaintiff received a CPAP mask refitting and that he felt a different type of mask might be more appropriate for him.[21]  Plaintiff was directed to follow up with the clinic in approximately four weeks but was also instructed to follow up "earlier if he has any difficulty with his current set[-]up."[22]

The record contains no further evidence to indicate that Plaintiff did follow up after that last consultation.  Indeed, even though the hearing before the ALJ was nearly three months after the above-referenced final medical report, Plaintiff did not present any additional evidence or provide any testimony during the hearing concerning his sleep apnea.  The court's review of the

---

[16]  *See* Tr. 166.

[17]  *See* Tr. 167.

[18]  *See id.*

[19]  *See* Tr. 164-65.

[20]  *See* Tr. 164.

[21]  *See id.*

[22]  Tr. 165.

7

transcript of the hearing before the ALJ reveals that the following exchange, which occurred

during Plaintiff's counsel's opening statement, was the only mention of Plaintiff's sleep apnea

during the hearing:

> [Plaintiff's counsel:]   He's also been diagnosed with sleep apnea
> that's not well controlled by the treatment
> procedures.  There's discussion of him in the
> record discussing that with his doctor and
> the frustrations - -
>
> ALJ:   Has he tried CPAP?
>
> [Plaintiff's counsel]:   Yes.  It's the CPAP that's not working, just
> isn't working.  They're trying different
> modalities of the CPAP to get it working,
> and Mr. - -
>
> ALJ:   Yeah, I know there's a lot of trouble with
> fittings, and people getting claustrophobic.
>
> [Plaintiff's counsel]:   And that's exactly what he's been troubled
> with.[23]

That notwithstanding, Plaintiff claims in his opening brief that he testified at the hearing

that his sleep apnea was not well controlled by treatment and that he suffered from significant

daytime fatigue as a result.  Notably, however, that claim is unaccompanied by a citation to the

portion of the transcript containing that testimony, and the court is unable to locate any such

testimony.

In sum, while there is evidence in the record indicating that Plaintiff's sleep apnea caused

some minor limitations at the outset of treatment, there is also a lack of evidence to indicate that

---

[23] Tr. 215.

his sleep apnea was a severe impairment or that the treatment plan was followed to its conclusion.  Accordingly, the court concludes that with respect to his sleep apnea, Plaintiff failed to carry his "burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins*, 113 F.3d at 1167. Consequently, the court also concludes that the ALJ did not err by failing to determine that Plaintiff's sleep apnea was a severe impairment.

## II.  Treating Physician

Plaintiff argues that the ALJ improperly "rejected" the opinions of his treating physician, Dr. Webster.  Because Dr. Webster is Plaintiff's treating physician, his opinions are entitled to controlling weight if they are well supported and are not inconsistent with other substantial evidence in the record.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  At the same time, however, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.  *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).  In addition, Dr. Webster's ultimate opinion that Plaintiff was disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]."  *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

In this case, the ALJ carefully and specifically explained the inconsistencies between Dr. Webster's treatment notes and the extent of the limitations outlined in his report.[24]  Based upon those inconsistencies, the ALJ concluded that he viewed Dr. Webster's opinion as "less persuasive" when determining Plaintiff's RFC.[25]  After reviewing the relevant medical evidence and the ALJ's decision, the court concludes that the ALJ acted properly by resolving the evidentiary inconsistences presented by Dr. Webster's opinions.  *See Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247.  In doing so, the ALJ complied with his obligation to "give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

Moreover, the court's review of the medical evidence and the ALJ's decision reveals that the ALJ did not, as Plaintiff claims, "reject" Dr. Webster's opinions.  Quite to the contrary, as noted by the Commissioner, the ALJ's RFC determination incorporated virtually all of the functional limitations noted in Dr. Webster's report.[26]  In fact, it appears that the only restriction that was not adopted by the ALJ was Dr. Webster's conclusion near the end of his report that Plaintiff could only work three to four hours per day.[27]  Notably, it appears that the ALJ did not adopt that conclusion because it conflicted with the remainder of Dr. Webster's report.  Earlier in the report, in a more detailed section concerning the amount of time Dr. Webster believed

---

[24]  *See* Tr. 19

[25]  *Id*.

[26]  *See* Tr. 16, 194-97.

[27]  *See* Tr. 197.

10

Plaintiff was able to work, Dr. Webster indicated that Plaintiff could sit for a total of four to six hours during an eight-hour workday and could stand and/or walk for a total of two to three hours during an eight-hour workday.[28]  Those conclusions are in direct conflict with Dr. Webster's conclusion later in the report that Plaintiff could work for only three to four hours during an eight-hour workday.

In essence, Plaintiff's argument is that the ALJ was required to accept all of Dr. Webster's conclusions that were favorable to Plaintiff, including those indicating that Plaintiff could only work three to four hours per day and that Plaintiff was disabled, regardless of any inconsistencies within Dr. Webster's report.  As previously noted, however, it is the ALJ's role to resolve evidentiary conflicts and inconsistencies such as those presented in Dr. Webster's report. *See Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247.  Further, the ultimate issue of disability was one to be determined by the ALJ, not Dr. Webster.  *See Castellano*, 26 F.3d at 1029; *see also* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

Based upon the foregoing, the court concludes that the ALJ did not err with respect to his treatment of Dr. Webster's opinions.

### III.  Plaintiff's Testimony

Plaintiff contends that the ALJ erred by failing to provide valid reasons for his determination that Plaintiff's testimony was not credible.  More specifically, Plaintiff argues that

---

[28]  *See* Tr. 195.

11

the ALJ improperly relied upon Plaintiff's ability to perform daily activities in reaching his ultimate conclusion about Plaintiff's credibility.

"Credibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted). Although credibility determinations "should be closely and affirmatively linked to substantial evidence," *id*. (quotations and citation omitted), they "do[] not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

In his decision, the ALJ concluded that Plaintiff's testimony concerning the intensity, duration, and limiting effects of his symptoms was "not entirely credible."[29]  The ALJ recognized Plaintiff's assertion that his impairments and related symptoms precluded him from working a full day; however, the ALJ also determined that Plaintiff's assertion was inconsistent with his description of his daily activities.[30]  Specifically, the ALJ noted that Plaintiff's assertion was inconsistent with Plaintiff's ability to attend therapy appointments, take his son to and from school, go to the library, perform light household chores, read, help his son with his homework, study for the real estate examination, cook, grocery shop, and perform his own personal needs with some assistance.[31]  While the ALJ acknowledged that Plaintiff testified he was "limited in

---

[29]  *See* Tr. 17 (emphasis omitted).

[30]  *See id*.

[31]  *See id*.

his ability to perform activities of daily living and that he relies on his sons for assistance," the ALJ also noted that Plaintiff had been able to complete real estate training and worked (at least part-time) as a real estate agent during the period under review.[32]  For these reasons, the ALJ concluded that Plaintiff had "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."[33]

Plaintiff claims that it was improper for the ALJ to rely upon Plaintiff's sporadic and minimal activities in assessing of Plaintiff's credibility.  The court disagrees with Plaintiff's characterization of the above-referenced activities as sporadic and minimal.  As the ALJ's decision demonstrates, he considered Plaintiff's participation in a wide range of activities, some of which Plaintiff undertook on a daily basis, and many of which were not minimal.  Further, it was proper for the ALJ to consider Plaintiff's daily activities in determining Plaintiff's credibility.  *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988); SSR 96-7p; *see also, e.g.*, *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979) (stating that while they are not conclusive, a claimant's ability to drive an automobile, attend school, or do some work on an intermittent basis may be considered by the ALJ in determining disability).

In addition, as noted by the Commissioner, Plaintiff has failed to recognize the portion of the ALJ's decision in which he notes the significant gaps in Plaintiff's medical contacts relating

---

[32]  *Id*.

[33]  *Id*.

13

to his impairments.[34]  The frequency of Plaintiff's medical contacts is another factor that the ALJ may consider in determining Plaintiff's credibility.  *See Huston*, 838 F.2d at 1132; SSR 96-7p.

Plaintiff also cites to selected evidence from the record that supports his position and could be construed as being contrary to the ALJ's credibility determination.  However, the mere fact that contradictory evidence exists in the record is not relevant to this court's review of the ALJ's credibility determination.  As the court has previously stated, the resolution of evidentiary conflicts is left to the ALJ.  *See Rutledge*, 230 F.3d at 1174.  Further, from an evidentiary standpoint, it is only relevant to this court whether substantial evidence exists in the record to support the ALJ's credibility determination.  *See Kepler*, 68 F.3d at 391.

Based upon the foregoing, the court has determined that the ALJ relied upon proper factors in making his specific findings about Plaintiff's credibility.  *See Huston*, 838 F.2d at 1132; SSR 96-7p.  In addition, the court has reviewed the relevant portions of the record cited by the ALJ in support of those findings.[35]  After that review, the court has determined that the cited portions constitute substantial evidence in support of the ALJ's credibility findings and that the ALJ's findings are closely and affirmatively linked to that substantial record evidence.  Accordingly, the court will not disturb the ALJ's conclusion about Plaintiff's credibility.

---

[34]  *See* Tr. 18.

[35]  *See* Tr. 17.

14

## IV.  Analysis Under Step Four

Plaintiff argues that the ALJ erred in his step four analysis by failing to comply with SSR 82-62, as interpreted by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996).

In relevant part, SSR 82-62 provides that when an ALJ determines that a claimant has the capacity to perform past relevant work, the ALJ's decision must contain the following three findings of fact:

> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62.  That three-phase process has been strictly interpreted and requires "the ALJ himself [to] make the required findings on the record."  *Winfrey*, 92 F.3d at 1025; *see also, e.g.*, *Young v. Apfel*, No. 98-6411, 1999 U.S. App. LEXIS 27918, at *10-13 (10th Cir. Oct. 28, 1999) (unpublished) (reiterating "*Winfrey*'s requirement that the ALJ make his own findings on the record" and reversing based, in part, on the ALJ's failure to make the second finding required by SSR 82-62).

Plaintiff first argues that the ALJ erred with respect to the first finding required by SSR 82-62.  To that end, Plaintiff essentially reasserts the same arguments made above concerning the ALJ's treatment of Dr. Webster's opinions and the ALJ's credibility determination.  The court has already rejected those arguments and rejects them again here.  The ALJ's factual findings with respect to Plaintiff's RFC are sufficient to satisfy the first required finding under SSR 82-62.

Plaintiff then argues that the ALJ failed to make either the second or third findings required by SSR 82-62.  The court agrees.  Nowhere in the ALJ's decision are there any specific factual findings about the physical and mental demands of Plaintiff's past relevant work as a data transcriber or about whether Plaintiff's RFC would allow him to return to such work.  *See* SSR 82-62.  The ALJ did make the bare conclusion that Plaintiff's past relevant work as a data transcriber did not require the performance of any work-related activities precluded by Plaintiff's RFC,[36] but without the second required finding, the court is unable to determine whether that conclusion is correct.  *See, e.g.*, *Young*, 1999 U.S. App. LEXIS 27918, at *11 (stating that while the ALJ "ostensibly made the finding required at the third step" in the form of a conclusion, "he failed to make the second required finding[] regarding the demands of [the claimant]'s past work, an omission that invalidates the latter finding").

The ALJ's decision states, in essence, that the second and third findings were left to the vocational expert ("VE").  In his decision, the ALJ stated: "In comparing [Plaintiff]'s [RFC] with the physical and mental demands of this work, the [VE] testified that [Plaintiff] is able to perform it as actually and generally performed in the national economy.  The [ALJ] concurs with this opinion."[37]  This was improper because it deprived the court of performing any meaning judicial review of those findings.  As the *Winfrey* court stated,

> Requiring the ALJ to make specific findings on the record at each
> phase of the step four analysis provides for meaningful judicial

---

[36] *See* Tr. 20.

[37] *Id*.

> review. When, as here, the ALJ makes findings only about the
> claimant's limitations, and the remainder of the step four
> assessment takes place in the VE's head, we are left with nothing
> to review.

*Winfrey*, 92 F.3d at 1025. While it is true that the ALJ provided the VE with a hypothetical at the

hearing that incorporated nearly all of the limitations of Plaintiff's RFC,[38] that does not relieve

the ALJ of the responsibility of making the specific findings required by SSR 82-62 and *Winfrey*.

*See Young*, 1999 U.S. App. LEXIS 27918, at *12 ("The Commissioner argues that *Winfrey* is

inapplicable to this case because, unlike the situation there where the hypothetical question to the

[VE] did not accurately reflect all of the claimant's limitations . . . , the one here did. That valid

factual distinction, however, does not diminish *Winfrey*'s requirement that the ALJ make his own

findings on the record, which is required by the Commissioner's own ruling. *See* [SSR] 82-

62.").

Based on the foregoing, the court concludes that the ALJ erred in his analysis under step

four by failing to make the findings required by SSR 82-62 and *Winfrey*. Accordingly, the court

will remand this case so that the ALJ can complete the analysis under step four by making those

factual findings.

### V.  SSR 00-4p

Pursuant to SSR 00-4p, before an ALJ relies upon a VE's testimony to support a

disability determination, he must identify and obtain a reasonable explanation for any conflicts

between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), as well as

---

[38] *See* Tr. 239-41.

explain in his decision how any such conflicts were resolved.  *See* SSR 00-4p; *see also Haddock v. Apfel*, 196 F.3d 1084, 1089-92 (10th Cir. 1999).  SSR 00-4p provides that the ALJ has an "affirmative responsibility" to ask the VE about any possible conflicts between the VE's testimony and the DOT.  SSR 00-4p.  If a VE's testimony appears to conflict with the DOT, the ALJ must then obtain a reasonable explanation for the apparent conflict.  *See id*.

Plaintiff argues that the ALJ erred by failing to satisfy his obligations under SSR 00-4p. Because the ALJ clearly relied upon the VE's testimony in his decision, Plaintiff asserts that the ALJ had an obligation to ask the VE about any possible conflicts between that testimony and the DOT.  In response, the Commissioner argues that while the ALJ did not specifically ask the VE if his testimony conflicted with the DOT, that represented nothing more than harmless error because no such conflict exists in this case.

As the Commissioner admits, it is clear in this case that the ALJ did not specifically ask the VE about conflicts between his testimony and the DOT.  That notwithstanding, the court concludes that there is no reversible error because there was no apparent conflict.  Notably, in his reply to the Commissioner's argument, Plaintiff neither indicates that he was indeed prejudiced by the ALJ's failure to adhere to SSR 00-4p nor provides the court with the specific conflicts that exist between the VE's testimony and the DOT.  Instead, he appears to assert that SSR 00-4p and *Haddock* preclude application of a harmless error analysis to an ALJ's failure to adhere to SSR 00-4p.  The court finds no support for that assertion in either SSR 00-4p or *Haddock*.  Further,

18

the ALJ explicitly concluded in his decision that there were no conflicts between the VE's testimony and the DOT.[39]

Because no apparent conflict exists, and because the ALJ explicitly concluded that no conflicts exist, the court concludes that the ALJ's failure to make the inquiry required by SSR 00-4p constitutes harmless and nonreversible error.

## CONCLUSION

In summary, the court concludes:

1.      The ALJ did not err by failing to determine that Plaintiff's sleep apnea was a severe impairment.

2.      The ALJ did not err with respect to his treatment of Dr. Webster's opinions.

3.      The ALJ did not err with respect to his determination about Plaintiff's credibility.

4.      The ALJ erred in his analysis under step four by failing to make the findings required by SSR 82-62 and *Winfrey*.  *See Winfrey*, 92 F.3d at 1025.  Accordingly, this case will be remanded so that the ALJ can complete the analysis under step four by making those factual findings.

5.      The ALJ's failure to make the inquiry required by SSR 00-4p constitutes harmless and nonreversible error in this case.

---

[39]  *See* Tr. 20.

19

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED:**

1.      This case is **REMANDED** for the sole purpose of allowing the ALJ to complete

his analysis under step four by making the findings required by SSR 82-62 and *Winfrey*. *See id.*

2.      All other portions of the Commissioner's decision in this case are **AFFIRMED**.

**IT IS SO ORDERED**.

DATED this 26th day of March, 2008.

BY THE COURT:


PAUL M. WARNER
United States Magistrate Judge

20